UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Renee M. Wolff,

                         Plaintiff,

      v.

Commissioner of Social Security,[1]

                        Defendant.

**Decision and Order**

17-CV-469 HBS
(Consent)

## I.   INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 7, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 8, 10.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits under Title II of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II.   DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as

---

[1] The Clerk of the Court is directed to conform the caption of the case to the caption of this decision.

"'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other

2

kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that her impairments prevent her from returning to her previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing her past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing her past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing her past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

3

physical and mental demands of the work that she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to her past relevant work given her residual functional capacity. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff argues that the ALJ had no physical basis for concluding that she had an RFC of sedentary work with some limitations. According to plaintiff, "[t]he only medical [] opinion of record that dealt with Plaintiff's physical limitations was provided by Dr. Balderman, a consultative examiner. (Tr. 310). Dr. Balderman found that Plaintiff had no physical limitations. (Tr. 312). The ALJ granted this opinion 'little weight' because it was 'inconsistent with the record as a whole given subsequent records, such as those from a treating rheumatologist documenting osteoarthritis and fibromyalgia, which supports some physical limitations.' (Tr. 30)." (Dkt. No. 8-1 at 17.) Without any other medical opinion addressing physical limitations, "[t]here is simply no basis for the ALJ's physical RFC, absent any competent medical opinion suggesting physical limitations. Nothing in the record allows the ALJ to determine that the Plaintiff could occasionally climb ramps and stairs, or that alternating from sitting to standing after one hour of sitting would allow the Plaintiff to complete an eight-hour work day on a consistent basis." (*Id.* at 19.) Plaintiff also suggests that some of the evidence became stale and that "[t]he ALJ should have contacted the rheumatologist to see whether osteoarthritis and fibromyalgia may have significantly limited the Plaintiff's ability to sit during the work day. In the alternative, the ALJ should have ordered a new consultative examination." (Dkt. No. 11 at 2.) The Commissioner contests any assertion of stale medical evidence, pointing to the ALJ's reference to "subsequent records" as the reason why Dr. Balderman's opinion received little weight. (Dkt. No. 10-1 at 14 (citing [33]).) The Commissioner then points to a number of pages in the record that are consistent with the RFC determination:

> In his decision, the ALJ noted that in September 2014, Dr. Schulte, Plaintiff's rheumatologist, documented Plaintiff's 1.5 year history of diffuse joint pain and

4

> muscle tenderness and assessed Plaintiff's osteoarthritis as having "deteriorated." Tr. 27; *see* Tr. 384. However, at no point did Dr. Schulte limit Plaintiff's functional abilities. Rather, as noted by the ALJ, Dr. Schulte stressed non-pharmacologic measures for management of Plaintiff's pain, including stress management, exercise, good sleep hygiene, minimizing caffeine intake, and avoiding smoking and smoke exposure. Tr. 27; *see* Tr. 457. The ALJ also observed that although Plaintiff reported increased knee pain to Dr. Schulte on June 8, 2015, this was due to her gardening all day the day before. Tr. 28; *see* Tr. 388. The ALJ further noted that Plaintiff reported pain relief doing physical therapy exercises. Tr. 28. The ALJ additionally noted that while Dr. Lall's records reveal treatment for tinnitus, TMJ pain, nasal issues and sleep apnea, the record shows no significant abnormal findings that would cause more than a minimal impact on Plaintiff's ability to function. Tr. 28. Indeed, Dr. Lall's physical examination findings were unremarkable and Plaintiff's gait was normal. Tr. 434-35, 424, 435, 440. Plaintiff was encouraged to lose weight in order to lessen her sleep apnea. Tr. 397. Thus, the unremarkable physical examination findings of record subsequent to Dr. Balderman's July 2013 examination and opinion support the RFC for sedentary work—the least exertionally demanding level of work—with postural limitations and a sit/stand option. Tr. 23. 20 C.F.R. § 404.1527(a).

(*Id.* at 15–16.)

The Commissioner has the better argument here. In 2014, plaintiff had morning stiffness and pain "exacerbated by standing or lifting repetitively." [387.] According to a note from October 2014, plaintiff's "[f]unctional limitations include: walking, bending and transfers." [398.] The symptoms continued in 2015. [391.] These records suffice to support the physical limits that the ALJ added to the capacity for sedentary work. As the Commissioner has cited, other portions of the record are consistent with the capacity for sedentary work. [426–446.] *Cf. Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (affirming finding of no disability, where medical assessment and activities questionnaire were "consistent with a residual capacity to perform light work"); *Shamburger v. Colvin*, No. 1:15-CV-00107(MAT), 2017 WL 4003032, at *3 (W.D.N.Y. Sept. 12, 2017) (RFC supported by treatment notes) (citations omitted); *Stock v. Astrue*, No. 11-CV-903S, 2013 WL 1337199, at *4 (W.D.N.Y. Mar. 29, 2013) (RFC consistent with medical reports and symptoms).

Next, plaintiff argues that the ALJ failed to explain the cognitive or psychological limitations that he added to the capacity for sedentary work. "While the ALJ gave 'significant weight' to Dr.

5

Duffy's opinion, it is unclear why the ALJ believed that the moderate limitations Dr. Duffy opined to in regards to Plaintiff's ability to deal with stress and relate with others could be accommodated by his RFC, which simply limited Plaintiff to simple work with frequent interaction with supervisors and no or only incidental interaction with coworkers and the public." (Dkt. No. 8-1 at 25.) The Commissioner responds that "it is significant to note that one year prior to Plaintiff's amended alleged onset date, on April 23, 2013, Dr. Masci cleared Plaintiff 'to return to work without restrictions on 4/25/13,' despite Plaintiff's diagnoses of panic disorder with agoraphobia and occupational stress. Tr. 25; *see* Tr. 241. Also, in May 2013, Dr. Masci opined that Plaintiff should not be in crowds and should avoid shopping, but he did not preclude her from working. Tr. 25; *see* Tr. 244. In fact, Dr. Masci rated Plaintiff's global assessment functioning (GAF) score as 65, indicating only mild symptomatology. Tr. 25; *see* Tr. 244. The evidence of record does not reveal that Plaintiff's mental state worsened to the point where she could not perform work-related activities after she stopped seeing Dr. Masci in May 2013. Tr. 423." (Dkt. No. 10-1 at 18–19.) The portions of the record that the Commissioner cited are in addition to other portions that are consistent with the ALJ's limitations. In 2013, plaintiff set a return to work as a top treatment goal. [269.] Cognitive behavioral therapy appeared to have some success. [273–74.] Although plaintiff continued to have difficulties, she was reporting sustained improvement in 2015 and "would like to be able to obtain and maintain employment." [381.] Under these circumstances, and considering plaintiff's challenges with symptoms of agoraphobia and with completing tasks in a timely fashion [380, 381], the limitations added to the capacity for sedentary work are supported by substantial evidence. *Cf., e.g., Cowley v. Berryhill*, 312 F. Supp. 3d 381, 384 (W.D.N.Y. 2018) (citations omitted); *Lynn v. Colvin*, No. 15-CV-6665L, 2017 WL 743731, at *3 (W.D.N.Y. Feb. 27, 2017) (citations omitted); *Casler v. Astrue*, 783 F. Supp. 2d 414, 417 (W.D.N.Y. 2011) (citations omitted).

## III. CONCLUSION

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 10) and denies plaintiff's cross-motion (Dkt. No. 8).

The Clerk of the Court is directed to close the case.

SO ORDERED.

_/s Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: March 27, 2019